158

*In re* MARRIAGE OF HANNE BAILEY, Petitioner-Appellee, and DAVID ALLAN BAILEY, Respondent-Appellant.

First District (1st Division)   No. 83—2102

Opinion filed January 14, 1985.

Sheldon S. Grauer, of Broadview, for appellant.

Raymond J. Courney, of Oak Brook, for appellee.

PRESIDING JUSTICE McGLOON delivered the opinion of the court:

Respondent, David Allan Bailey, appeals from the order dissolving his marriage with petitioner, Hanne Bailey. On appeal, respondent ar-

gues: (1) the trial court erred in awarding custody of the parties' youngest child to petitioner; (2) the trial court erred in assessing respondent petitioner's attorney fees in the amount of $10,000; and (3) the trial court erred in denying respondent's motion for child support from petitioner.

We affirm.

The parties were married in 1967 and had three sons. Raymond was born in 1968, Eric was born in 1970, and Michael was born in 1975. Petitioner filed for dissolution on September 30, 1980. On April 18, 1981, she permanently left the marital residence. She took Michael with her and retained custody of him until August 13, 1981, when the trial court entered an agreed order awarding temporary custody of the three children to respondent. Since that time, the children have lived with respondent and petitioner has had visitation rights.

Petitioner testified respondent told the children they should not listen to petitioner or do anything she told them. He told the children she was insane and should be institutionalized. Respondent interfered with her rights of visitation with the children. He scheduled activities with the children during her normal time of visitation. He objected to her stopping at the house after work to see the children. He objected to the children calling her on the telephone. He had the locks of the house changed. Petitioner testified she and the children have a loving relationship and have fun during their time together. Michael gets very upset when he has to leave and return to his father.

Respondent denied interfering with petitioner's rights of visitation. "Quite a few times" respondent had to direct the children to go with their mother. Sometimes he would have to take them over to petitioner's home because the children were reluctant to go.

Peggy Vernado, a caseworker from the Cook County Department of Supportive Services, testified she prepared a report on the instant case. She interviewed the parties and the children. She believed petitioner had a concern for the welfare of her children and that the children seemed to relate well to her. Raymond and Eric told her they wished to live with their father, while Michael told her he wished to live with his mother. The witness concluded in her report that both parents were equally capable of providing adequate care for the children. She recommended that the children remain in the custody of respondent because he had provided them with adequate care and she saw no reason to change the status quo.

Dr. Alice R. Dakin, a psychiatrist, testified she prepared a report regarding the family situation. She interviewed the parties and the

children. Raymond and Eric told her they wished to live with their father and Michael told her he wished to live with his mother. Michael told her he misses his mother very much, dreams about her every night, and sometimes cries when he goes to bed. The witness believed it was normal for a child of Michael's age to feel greater attachment to his mother than his father. The witness believed respondent showed a greater concern for the problems of the children than did petitioner. She believed that there should be compelling reasons to change the current custody situation. She also believed Michael would benefit from remaining with his father. He would have a stronger male identification than he would if he lived with his mother.

The trial judge continued the examination of Dr. Dakin. He expressed his disturbance with what he perceived as a continuing effort on the part of respondent to systematically exclude petitioner from the lives of the children. The witness agreed that it was very important that both parents have access to the children.

At the end of the testimony, Joel Schaps, guardian *ad litem* for the children, recommended the court accept the recommendations of the caseworker and psychiatrist and award permanent custody of all three children to respondent.

In announcing his decision, the trial judge stated that he gave the advice of the guardian *ad litem*, the psychiatrist, and the caseworker, "very, very serious consideration." However, he stated that "the course of events during the trial, convinced me that I ought to depart from the advice in the case." The judge concluded that if he awarded custody of all three children to respondent, he would successfully "freeze petitioner out" of the lives of the children. The judge also concluded that the court's monitoring of the rights of visitation would not be an adequate alternative.

■ First, respondent argues the trial court erred in awarding custody of Michael to petitioner.

The trial court is directed to determine custody of a child in accordance to the best interest of that child. (Ill. Rev. Stat. 1981, ch. 40, par. 602(a).) The court should consider the preference of the child in its decision. (Ill. Rev. Stat. 1981, ch. 40, par. 602(a)(2).) In custody cases the trial court is vested with great discretion because it has a better opportunity to observe the witnesses and to determine the best interests of the child. (*In re Custody of Piccirilli* (1980), 88 Ill. App. 3d 621, 410 N.E.2d 1086.) A reviewing court will not disturb the decision of the trial court unless it is against the manifest weight of the evidence or unless manifest injustice will result. (*In re Custody of Blonsky* (1980), 84 Ill. App. 3d 810, 405 N.E.2d 1112.) Although the

testimony of psychologists and social workers is relevant to the determination of custody, their opinions are not binding on the court. (*In re Marriage of Milovich* (1982), 105 Ill. App. 3d 596, 434 N.E.2d 811.) The awarding of siblings to different parents is sometimes warranted. *In re Marriage of Ford* (1980), 91 Ill. App. 3d 1066, 1072, 415 N.E.2d 546.

In the case at bar, although the experts recommended respondent retain custody of Michael, there was certainly no suggestion that petitioner would be an unfit custodian. In fact, the testimony reveals that petitioner has a deep concern for Michael, and the investigator from the Department of Supportive Services testified specifically that both parents are equally capable of providing adequate care for the children. Furthermore, petitioner had custody of Michael for a period of months before respondent received temporary custody of the children. Clearly, the trial court made the factual determination that petitioner had afforded Michael adequate care and that Michael's development was in no way harmed by her having custody. Finally, the trial court made the factual determination that respondent would successfully frustrate petitioner's contact with the children were he to retain custody of all the children. The testimony of Dr. Dakin makes clear that the children's access to both parents is extremely important to their future development. The court, in its discretion, concluded that the best method to ensure continued contact between the children and both parents was through the division of custody. Therefore, the court determined custody in accordance to their individual preferences and in accordance with his determination of the best interests of each child. Under the unique circumstances in the case at bar, we cannot say that the determinations of the trial court were contrary to the manifest weight of the evidence or would result in a manifest injustice.

Second, respondent argues the trial court erred in ordering him to pay $10,000 of petitioner's attorney fees.

The order of dissolution granted respondent approximately $27,000 worth of marital property and petitioner approximately $29,500 worth of marital property. Petitioner was obligated to pay medical insurance for the children. Petitioner's reported income for 1982 was $13,958. Respondent's source of income was an appliance repair business. He declared he drew $3,825 from the business in 1982. However, testimony indicated he spent considerably more than that amount of money. Respondent testified he drew some money from an account belonging to his mother. In 1980, petitioner inherited approximately $6,200. Respondent inherited the estate of his mother,

worth approximately $80,000.

Counsel for petitioner presented a petition for fees in the amount of $16,195. Accompanying the petition was a detailed time sheet representing 161.95 attorney hours. During the hearing on fees, the court asked respondent's attorney whether the number of hours billed by petitioner's attorney was "in the same league" as the number of hours respondent's attorney spent on the case. Counsel for respondent replied, "And a little bit more. But I can understand he probably [had] to talk to [petitioner] more."

In dissolution proceedings, the award of attorney fees is left to the sound discretion of the trial court. (*In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808, 439 N.E.2d 1005.) The court is directed to consider the "financial resources of the parties." Ill. Rev. Stat. 1983, ch. 40, par. 508(a).

In the case at bar, the trial court in its discretion did not dispute the time spent by counsel on behalf of petitioner or the value of the legal services. Considering the respective financial resources of the parties, we cannot say the trial court abused its discretion in assessing respondent $10,000 for petitioner's attorney fees.

■ Finally, respondent argues the trial court erred in denying his petition for child support.

Like the award of attorney fees, the determination of child support is a matter within the sound discretion of the trial court. (*In re Marriage of Dwan* (1982), 108 Ill. App. 3d 808.) In the case at bar, considering the financial resources of the parties and considering that each parent will incur child-rearing expenses, we conclude the denial of respondent's petition for child support was proper.

For these reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY and O'CONNOR, JJ., concur.